1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  BETSEY WARREN LEBBOS,              No. 2:08-cv-00680-MCE

12          Appellant/Debtor,

13      v.                            MEMORANDUM AND ORDER

14  LINDA SCHUETTE,

15          Appellee/Trustee.

16                        ----oo0oo----

17

18      In June of 2006, Betsey Warren Lebbos ("Debtor") filed for

19  bankruptcy.  Linda Schuette ("Trustee") was appointed as Trustee

20  of the Debtor's case, 06-22225-D-7, and subsequently hired

21  Michael Daquisto as counsel for the estate.  At the time of her

22  filing, the Debtor failed to disclose or exempt from the

23  bankruptcy estate her interest as plaintiff in an existing civil

24  rights lawsuit ("Lawsuit") being litigated by Joseph Giovanazzi.

25  Upon discovery of that litigation, the Trustee negotiated a

26  settlement with the defendant, the County of Santa Clara, and

27  moved for court approval to compromise the Debtor's interest in

28  the Lawsuit.

                                1

On January 16, 2008, at a hearing on the matter, the Court denied the Trustee's Motion without prejudice on the grounds that it should properly have been briefed as a motion for approval of a "hybrid" transaction encompassing both a sale and a compromise. The Trustee subsequently renewed her motion as directed and, after a second hearing on March 12, 2008, the bankruptcy court approved the Trustee's sale/compromise of the Lawsuit in the amount of $6,400.  Presently before the Court is the Debtor's appeal of the bankruptcy court's refusal to continue the second hearing and its decision on the merits of the transaction.  For the following reasons, that court's decision is affirmed.[1]

**STANDARD**

District courts have jurisdiction to hear appeals from final orders of bankruptcy judges within the same judicial district. See 28 U.S.C. § 158(a).  "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. Pro. 8013.  "Conclusions of law are subject to de novo review."  In re Bialac, 712 F.2d 426, 429 (9th Cir. 1983). In addition, the court's approval of a sale/compromise is reviewed for an abuse of discretion.

///

---

[1] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument.  E.D. Local Rule 78-230(h).

2

In re Debbie Reynolds Hotel & Casino, Inc., 255 F.3d 1061, 1065
(9th Cir. 2001); In re 240 North Brand Partners, Ltd., 200 B.R.
653, 656 (9th Cir. BAP 1996).  The abuse of discretion standard
allows for reversal only if the appellate court has a "definite
and firm conviction" that the bankruptcy court "committed a clear
error of judgment in the conclusion it reached." Ditto v.
McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (internal quotations
and citations omitted.)

**ANALYSIS**

**I.   THE DEBTOR'S Lawsuit AUTOMATICALLY BECAME PART OF THE
      BANKRUPTCY ESTATE UPON FILING OF THE BANKRUPTCY PETITION**

     As a threshold matter, the Debtor claims that the bankruptcy
judge erred by determining, absent formal measures, that the
Lawsuit was part of the bankruptcy estate.  She is incorrect.

     "An 'estate' is created when a bankruptcy petition is
filed."  In re Wu, 173 B.R. 411, 413 (9th Cir. BAP 1994).  The
bankruptcy estate is comprised of "all legal or equitable
interests of the debtor in property as of the commencement of the
case."  11 U.S.C. § 541(a)(1).  "The Bankruptcy Code and Rules
'impose upon the bankruptcy debtors an express, affirmative duty
to disclose all assets, including contingent and unliquidated
claims.'"  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778,
785 (9th Cir. 2001), quoting In re Coastal Plains, 179 F.3d 197,
207-208 (5th Cir. 1999) (emphasis in original).

///

///

3

1   "The debtor's duty to disclose potential claims as assets does
2   not end when the debtor files schedules, but instead continues
3   for the duration of the bankruptcy proceeding."   Id.

4       The Debtor initiated her Lawsuit in March of 2002, and filed
5   her petition for bankruptcy in June of 2006.   Thus, her interest
6   in the Lawsuit was in existence, and automatically became part of
7   the bankruptcy estate, at the time she filed her bankruptcy
8   petition.

9       The Debtor cites to no applicable law, nor has this Court
10  found any, standing for the proposition that assets concealed
11  from the trustee, inadvertently or not, may be added to the
12  estate only through some formal process.   Thus, the bankruptcy
13  court was correct in determining that the Debtor's interest in
14  the Lawsuit was an asset of the bankruptcy estate.[2]

15

16

17     [2] The Court is aware that the Debtor now denies having ever
   filed the bankruptcy petition.   This Court has previously
18  addressed her argument, repeated here for convenience:

19      Lebbos asserts that her signature on the bankruptcy
        petition was forged, and thus it should be dismissed.
20      The bankruptcy court held that regardless of whether or
        not Lebbos signed her bankruptcy petition, her actions
21      and statements evidenced her intent to file and to
        receive the benefits of bankruptcy, and thus she is
22      bound by the petition. The bankruptcy judge notes that
        the Ninth Circuit Bankruptcy Appellate Panel ("BAP")
23      dealt with a debtor seeking dismissal of her bankruptcy
        petition on the basis of forged signatures in In re
24      Mendez, 367 B.R. 109 (9th Cir. BAP 2007). The BAP noted
        that "the real question in this case is whether the
25      Debtor intended to file for protection under chapter 7
        of the Bankruptcy Code...." Id. at 120 (emphasis
26      added).  The BAP found that the debtor appeared at
        bankruptcy hearings and received required credit
27      counseling, and never contested the validity of her
        petition. Id. at 119.
28                                     (continued...)

## II. THE BANKRUPTCY JUDGE'S DECISION NOT TO CONTINUE THE SECOND HEARING WAS PROPER

The Debtor argues that she, her creditors, and the attorney litigating the Lawsuit, Mr. Giovanazzi, received improper notice or no notice of the Trustee's second Motion for approval of the proposed sale/compromise.

### A. The Bankruptcy Court Properly Determined That the Trustee's Inclusion of the Prior Hearing Date in the Body of the Second Motion Was Harmless Error.

The record shows that the Trustee committed a technical error in her second motion by modifying the first motion for later use instead of drafting the filing anew. Apparently, she changed the date only in the caption, rather than in the body of the document. The Debtor relies on that oversight as an error capable of supporting reversal. Nevertheless, as the bankruptcy court noted, it was obvious that the date in the body, January 16, was not applicable as it had already passed at the time the second motion was filed.

///

---

[2](...continued)
In the instant case, Lebbos similarly participated in the bankruptcy case, including her production of exhibits, her request to the judges of the Santa Clara County Superior Court comply with the stay request, and her statement in a brief that she filed bankruptcy. Therefore, as held by the bankruptcy court, Lebbos' actions and statements show that she intended to be bound by her bankruptcy petition.

Order Denying Appellant's Ex Parte Request to Certify Appeal to the Ninth Circuit, 7:8-8:3 (E.D. Cal. September 28, 2008) ("Order Denying Request to Certify Appeal").

1  Moreover, the Debtor was clearly aware of the correct date

2  because she was able to draft and file a "Motion to Continue

3  March 12, 2008, Motion to Approve Compromise."  Thus, that court

4  properly determined that the incorrect date constituted harmless

5  error.

6

7      **B.   The Bankruptcy Court Did Not Err in Determining That**
       **The Debtor Received Actual Notice of the Second**
8      **Hearing.**

9

10     The Debtor next argues that she was not formally served with

11 the second motion and instead received notice via an internet

12 search.  However, the Debtor provides no evidence capable of

13 convincing this Court that the bankruptcy court's contrary

14 determination was clearly erroneous.

15     In reaching its decision, the bankruptcy court relied on the

16 proof of service indicating the Debtor was in fact served with

17 the second motion and that service was had at the correct

18 address.  Moreover, that court reasoned that its decision was

19 supported by the Debtor's ability to prepare and submit a ten-

20 page opposition brief, in conjunction with a nine-page

21 declaration, prior to the March 12 hearing.  Additionally, that

22 court noted that the issues before it remained virtually

23 unchanged from January to March and that it was clear from the

24 record that the Trustee at all times had every intention of

25 renewing her motion.  Finally, the bankruptcy court determined

26 that the request for a continuance was simply part and parcel of

27 the dilatory tactics in which the Debtor had engaged throughout

28 the bankruptcy proceedings.

Thus, in light of the ample evidence relied upon by the bankruptcy court, this Court cannot say that its determination was clearly erroneous.

## C. The Bankruptcy Court Properly Determined That the Appropriate Third Parties Received the Required Notice.

Finally, the Debtor argues that her creditors and the attorney handling her Lawsuit were legally entitled to formal notice of the sale/compromise, and that no such notice was forthcoming.  In its September 30, 2008 Order Denying Request to Certify Appeal, this Court found otherwise.[3]

---

[3] Again for convenience, the Court repeats its recent argument here:

> Bankruptcy cases may have a wider breadth of parties in interest than typical civil litigation. In re Mariner Post-Acute Network, Inc., 267 B.R. 46, 53 (Bankr.D.Del. 2001) (noting that in bankruptcy cases, certain matters may affect employees, vendors, landlords, parties to contracts, and other parties). However, this wider breadth does not translate into a notification requirement above and beyond Rule 9019(a). As noted by the bankruptcy judge during the approval hearing for the sale/compromise, Schuette was not required to notify Giovanazzi. He was not listed as a creditor in the parent bankruptcy case, had not filed a proof of claim, and had not requested special notice. Further, Giovanazzi filed a declaration opposing the sale/compromise, and thus not only was he notified, he had time to prepare and present his views on the sale/compromise, which were considered by the bankruptcy court.  Therefore, even though Schuette was not required to notify Giovanazzi, his declaration shows that he was aware of the sale/compromise. Rule 9019(a) is clear regarding the notice requirements in the event of a sale/compromise of a pending lawsuit in a bankruptcy proceeding, and thus Lebbos' first proposed question of law is moot.

(continued...)

1    Accordingly, the bankruptcy court's decision denying the

2  Debtor's Motion to Continue the March 12 hearing is affirmed.

3

4  **III.  THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION WHEN IT APPROVED THE SALE/COMPROMISE OF THE Lawsuit**

5

6    The Debtor argues that the Trustee and estate counsel were

7  incompetent to sell/compromise the Lawsuit and that the approval

8  of the sale/compromise was improper.  The Court addresses each

9  argument in turn.

10

11    **A.    The Bankruptcy Court Did Not Err When it Determined The Trustee and Counsel for the Estate Were Competent To Sell/Compromise the Lawsuit.**

12

13

14    The Debtor argues that the bankruptcy court erred in

15  allowing the Trustee's "rural Northern California Bankruptcy

16  attorney" to compromise or sell the Lawsuit.

17

18

19    [3](...continued)
          Lebbos further asserts that the trustee failed to

20  notify each creditor in the parent bankruptcy case. If
    true, this failure would be a violation of Rule

21  9019(a), as it requires notification of a compromise to
    all creditors.  See Fed. R. Bankr. P. 9019(a). Lebbos

22  attached to this Ex Parte Request a declaration from
    Mr. Paul Deavenport stating that he is a creditor, and

23  did not receive notice of the sale/compromise of the
    civil rights lawsuit. However, Lebbos herself stated in

24  a sworn declaration that listing Mr. Deavenport as a
    creditor was a mistake, and that he is not a creditor.

25  The bankruptcy judge notes that Mr. Deavenport is only
    a creditor when it is convenient for Lebbos. The

26  creditors received notice of the sale/compromise, and
    no creditor objected, including the alleged

27  creditor Mr. Deavenport.

28  Order Denying Request to Certify Appeal, 4:14-5:20.

1  Appellants Opening Brief, 3:26-4:6.  In keeping with this
2  argument, the Debtor appears to claim that it was erroneous to
3  discontinue retention of Mr. Giovanazzi.  Id., 4:19-23.  The
4  Debtor's argument boils down to a desperate attack on the Trustee
5  and her attorney by which the Debtor claims it was erroneous to
6  determine that "a non-lawyer rural trustee and her rural
7  Bankruptcy attorney who were not authorized to take over any
8  lawsuit may evaluate and settle and sell to the opposing party a
9  Los Angeles County federal civil rights jury lawsuit without any
10 knowledge of the case, witnesses, evidence, status, trial work,
11 federal civil rights cases, federal law, jury work, or Los
12 Angeles courts."  Id., 6:20-26.

13     Despite her assertions, "[c]ompromises are a normal part of
14 the process of reorganization. In administering reorganization
15 proceedings in an economical and practical manner it will often
16 be wise to arrange the settlement of claims as to which there are
17 substantial and reasonable doubts.  At the same time, however, it
18 is essential that every important determination in reorganization
19 proceedings receive the informed, independent judgment of the
20 bankruptcy court."  Protective Committee for Independent
21 Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S.
22 414, 424 (1968) (internal quotations and citations omitted).

23     A trustee and her counsel play a fundamental role in the
24 sale/compromise process.  "Among the trustee's duties is the
25 obligation to collect and reduce to money the property of the
26 estate. The property of the estate includes all legal or equitable
27 interests of the debtor in property as of the commencement of the
28 case, including the debtor's causes of action."

9

1   Smith v. Arthur Andersen LLP, 421 F.3d 989, 1002 (9th Cir. 2005)

2   (internal quotations and citations omitted).  Thus, subject to

3   judicial approval, the Trustee is tasked with liquidating estate

4   property, including, in the instant case, the estate's interest in

5   the Lawsuit.[4]

6        Though the Trustee is required by law to reduce the assets

7   of the estate to cash, the Debtor claims that the Trustee and

8   Trustee's counsel were incompetent to do so because the Lawsuit

9   involves issues outside of the realm of their bankruptcy

10  expertise.  A trustee is required to be "an individual that is

11  competent to perform the duties of trustee and...resides or has

12  an office in the judicial district within which the case is

13  pending, or in any judicial district adjacent to such district."

14  11 U.S.C. § 321(a)(1).  "A trustee is the 'legal representative'

15  and 'fiduciary' of the estate."  In re AFI Holding, Inc., 355

16  B.R. 139, 147 (9th Cir. BAP 2006).  Thus, a trustee and

17  bankruptcy counsel are appointed based on their competency to

18  represent the bankruptcy estate, not for their expertise in other

19  areas of the law.

20

21       [4] The Court is aware of the Debtor's contention that the
    Trustee engaged in the unauthorized practice of law by signing a
22  settlement agreement on behalf of the bankruptcy estate.
    Moreover, the Debtor claims that the estate's counsel also
23  committed said crime because he is not "licensed to practice law
    in the Central District," which is the district in which the
24  Lawsuit is being litigated.  The Debtor thus admits that the
    Trustee, as the representative of the bankruptcy estate, was
25  represented by counsel and then fails to provide any evidence
    that such representation was invalid.
26       Additionally, the bankruptcy court correctly noted that the
    Trustee signed the settlement agreement as the representative of
27  the estate.  She signed the agreement because she was a party to
    it.  On the basis of that observation, the bankruptcy court
28  concluded that the Debtor's argument was ill-founded and
    frivolous.  This Court agrees.

1    Nonetheless, trustees are statutorily authorized to sell a
2    myriad of assets.  Specifically, "[t]he trustee, after notice and
3    a hearing, may use, sell, or lease, other than in the ordinary
4    course of business, property of the estate."  11 U.S.C.
5    § 363(b)(1).  Nothing in the Code indicates that a trustee must
6    be especially knowledgeable in a particular area in order to sell
7    or compromise an asset.  However, the Debtor proceeds to argue
8    that, in the instant case, in order to act competently as a
9    bankruptcy trustee in selling/compromising the estate's interest
10   in the pending Lawsuit, the Trustee and her counsel need also be
11   competent to litigate the underlying claim.

12   The Debtor has no authority for such a proposition and her
13   argument ignores both the fact that the Trustee could quite
14   possibly be competent to value Plaintiff's interest in the
15   lawsuit without actually having the present expertise to litigate
16   that case and the fact that the Trustee's agreed-upon settlement
17   was subject to judicial approval.[5]  The Debtor's conclusory
18   allegations of incompetence cannot support a reversal.  The
19   requirement of independent judicial review provides a system of
20   checks and balances meant to ensure the protection of the
21   creditors.
22   ///
23   ///

24
25        [5] The Court notes that the Debtor's assertion here flies in
     the face of her later statements in which she argues that the
26   Lawsuit is "not complex" and involves merely a "simple assault
     and battery case."  Appellant's Opening Brief, 44:1.  Instead of
27   advocating one position, she blithely advocates every position,
     employing a strategy as vacuous as it is unsuccessful.  The
28   bankruptcy court was correct in refusing to allow the Debtor to
     have her cake and eat it too.

11

1   That system was put to use here when the bankruptcy court

2   conducted its review of the sale/compromise and determined it to

3   be fair and equitable and within the sound discretion of the

4   Trustee.  Accordingly, on the record submitted, this Court is

5   unable to say that the bankruptcy court's decision to approve the

6   sale/compromise was anything other than proper.

7

8       **B.   Valuation of the Sale/Compromise**

9

10      Nevertheless, the Debtor challenges the bankruptcy court's

11  judgment arguing that there were no sound business reasons for

12  the sale, it was not fair and equitable or in the best interests

13  of the estate, and it was irrational, arbitrary, capricious and

14  too vague.  She also claims that, despite the extensive analysis

15  in which the bankruptcy court engaged in reaching its decision,

16  it abused its discretion.

17      "[T]he disposition by way of 'compromise' of a claim that is

18  an asset of the estate is the equivalent of a sale of the

19  intangible property represented by the claim, which transaction

20  simultaneously implicates the 'sale' provisions under [11 U.S.C.]

21  section 363 as implemented by [Federal Rules of Bankruptcy

22  Procedure,] Rule 6004 and the 'compromise' procedure of [Federal

23  Rules of Bankruptcy Procedure,] Rule 9019(a)."  In re Mickey

24  Thompson, 292 B.R. 415, 421 (9th Cir. BAP 2003).  "Whether to

25  impose formal sale procedures is ultimately a matter of discretion

26  that depends upon the dynamics of the particular situation."  Id.

27  at 422.  In the instant case, the bankruptcy judge analyzed the

28  subject transaction as both a compromise and a sale.

1    "On motion by the trustee and after notice and a hearing,
2    the court may approve a compromise or settlement.  Notice shall
3    be given to creditors, the United States trustee, the debtor, and
4    indenture trustees as provided in Rule 2002 and to any other
5    entity as the court may direct."  Fed. R. Bankr. Proc.,
6    Rule 9019(a).  "The bankruptcy court has great latitude in
7    approving compromise agreements.  However, the court's discretion
8    is not unlimited.  The court may approve a compromise only if it
9    is fair and equitable.  Moreover, in passing on the proposed
10   compromise, the court must consider: (a) The probability of
11   success in the litigation; (b) the difficulties, if any, to be
12   encountered in the matter of collection; (c) the complexity of
13   the litigation involved, and the expense, inconvenience and delay
14   necessarily attending it; (d) the paramount interest of the
15   creditors and a proper deference to their reasonable views in the
16   premises."  In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988)
17   (internal citations and quotations omitted).

18   Additionally, section 363(b) provides that "[t]he trustee,
19   after notice and a hearing, may use, sell, or lease, other than
20   in the ordinary course of business, property of the estate."
21   11 U.S.C. § 363(b)(1).  "The court's obligation in § 363(b) sales
22   is to assure that optimal value is realized by the estate under
23   the circumstances.  The requirement of a notice and hearing
24   operates to provide both a means of objecting and a method for
25   attracting interest by potential purchasers.  Ordinarily, the
26   position of the trustee is afforded deference, particularly where
27   business judgment is entailed in the analysis or where there is
28   no objection.

Nevertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibility ultimately is the court's."   In re Lahijani, 325 B.R. 282, 288-289 (9th Cir. BAP 2005).

As a threshold matter, the bankruptcy court noted that the only opposition to the motion to approve the sale/compromise was filed by the Debtor.  Though the creditors received notice of the motion, none appeared in opposition.[6]  Moreover, that court found it indicative of the accuracy of the valuation of the proposed sale that no individuals or entities sought to over-bid.

In its further analysis of the requisite factors, the bankruptcy court then determined that the likelihood of the Lawsuit's success was minimal insomuch as it depended largely on the Debtor's credibility and cooperation.  The court observed that, depending on the convenience of particular arguments to her relative positions, the Debtor referred to the Lawsuit both as a complex civil rights case requiring expert valuation and as a simple assault and battery case.  Similarly, the bankruptcy court found that, based on the Debtor's needs at any given time, she either expressed concern that the $6400 settlement would not make its way to unsecured creditors or, to the contrary, asserted that no creditors even existed because all claims were disputed.

---

[6] Again, the Court is cognizant of Plaintiff's contention that one alleged creditor, Mr. Deavenport, did not file an opposition because he did not receive notice of the second hearing.  This argument was disposed of above.  For clarity, this Court reiterates that the bankruptcy court's reasoning was proper.  That court determined Mr. Deavenport was a creditor only as it suited the Debtor.  Coupled with Mr. Deavenport's failure to oppose the second motion, the court gave little weight to his first opposition in reaching its decision.  There is no error.

1  Based on her fickle regard for consistency, the bankruptcy court
2  found the Debtor's credibility lacking.

3      Additionally, that court found the Debtor's inability to
4  bring the Lawsuit to fruition in over six years to be a predictor
5  of likely future success, and noted that the Debtor herself would
6  likely bring complexity to even a simple case.  Moreover, while
7  the prospective ability to recover from the defendant presented a
8  neutral factor, the cost of litigation was likely to be high.

9      Finally, in considering the paramount interest of the
10 creditors, as stated above, the Court remained unconvinced by the
11 single opposition submitted to the first motion.  While the
12 Debtor places great emphasis on the fact that the proceeds of the
13 sale/compromise will likely go to the administrative costs of the
14 Trustee and estate counsel rather than to creditors, the
15 bankruptcy court determined that the receipt of funds would be a
16 positive step toward rendering the estate administratively
17 solvent, ultimately benefitting everyone.  Based on its inquiry
18 into all prescribed factors, that court found the settlement to
19 be fair and equitable and the sale to be the product of sound
20 business decisions.

21     Not surprisingly, the Debtor disagrees with the bankruptcy
22 court's analysis and makes the unsupported assertion that it was
23 irresponsible to accept $6400 to settle a lawsuit she values at
24 between seven million and twenty million dollars.

25 ///
26 ///
27 ///
28 ///

Additionally, she dismisses any emphasis on her lack of
credibility as irrelevant to the success of the Lawsuit in Los
Angeles courts because "[e]ven Rodney King obtained over a
million dollars in Los Angeles, so credibility is not an issue
that determines success before a Los Angeles County jury."
Appellant's Opening Brief, 41:27-42:2.  Her arguments are nothing
short of frivolous.

Accordingly, this Court finds that the bankruptcy court
properly engaged in extensive factual analysis and properly
applied the controlling law.  There is simply no evidence
supporting a "definite and firm conviction," that the bankruptcy
court "committed a clear error of judgment in the conclusion it
reached."  The decision of the bankruptcy court is affirmed.

## IV.   THE SALE/COMPROMISE WAS NOT BARRED BY RES JUDICATA

The crux of the Debtor's next argument is that the
bankruptcy court's approval of the sale/compromise was precluded
by principles of res judicata because that court had denied the
Trustee's original January motion for settlement approval.  The
Debtor's argument ignores basic black-letter law.

"The doctrine of res judicata bars a party from bringing a
claim if a court of competent jurisdiction has rendered final
judgment on the merits of the claim in a previous action
involving the same parties or their privies."  In re
International Nutronics, Inc., 28 F.3d 965, 969 (9th Cir. 1994).
///
///

16

The Trustee's first motion was denied without prejudice.  Record, K-94:15-16.  Such a denial is not a final judgment.  Therefore, the court's later decision was not precluded by its January ruling.

## V.    THERE IS NO EVIDENCE THE BANKRUPTCY JUDGE WAS BIASED

Finally, the Debtor makes the incendiary accusation that the bankruptcy judge was biased and acted as her opponent in approving the sale/compromise of the Lawsuit.  Despite making such inflammatory statements in her appeal, the record is devoid of support for her conclusion.  Thus, this Court rejects the Debtor's argument as lacking any basis in law or fact.

## CONCLUSION

The Court notes for the record that the Debtor's appeal is embarrassingly inadequate both in its presentation of the facts and its failure to accurately apply the law.  As a former attorney, the Debtor is aware that conclusory allegations of wrongdoing, especially in the face of a record only capable of supporting contrary conclusions, cannot substitute for the legal and factual merits requisite to a viable appeal.

///
///
///
///
///

1   In the future, the Debtor is advised to give greater

2   consideration to what she files with the court before consuming

3   the limited and valuable resources of the federal courts.   The

4   decision of the bankruptcy court is AFFIRMED.

5        IT IS SO ORDERED.

6

    Dated: December 1, 2008

7

8                                   _____

9                                   MORRISON C. ENGLAND, JR.
                                    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18